**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re:<br>Esda Washington and<br>Kelly Washington,<br><br>          Debtors. | CASE NO. 11-51944<br><br>Chapter 13<br><br>Judge Preston |

**MEMORANDUM IN OPPOSITION TO DEBTORS' MOTION TO REQUIRE WELLS FARGO BANK, N.A. TO APPEAR AND SHOW CAUSE**

**I.    INTRODUCTION**

On January 11, 2019, Debtors Esda Washington and Kelly Washington ("Debtors") filed a Motion to Require Wells Fargo Bank, N.A. to Appear and Show Cause Why They Should Not Be Held in Contempt and For Sanctions and Damages ("Motion") (ECF Dkt. 159). The Motion alleges that during Debtors' Chapter 13 bankruptcy, they timely made all of their monthly mortgage payments but that Wells Fargo Bank, N.A. ("Wells Fargo") reported to credit reporting agencies that they had not, and that post-discharge Wells Fargo has failed to report to credit reporting agencies that they had timely made their payments. The Motion asserts that Wells Fargo should be held in contempt for violating this Court's discharge order and its Order to Deem Mortgage Current.

The Motion is factually inaccurate: Debtors did not timely make all of their monthly payments during the bankruptcy. Wells Fargo is not currently reporting that they have made any payments that are untimely. And Wells Fargo has deemed the Mortgage current.

The Motion is also wrong on the law. Unless it is being used as an attempt to obtain payment of a discharged debt, reporting that the debtor failed to make timely payments is not a violation of either the bankruptcy stay or the discharge injunction. This Court has no jurisdiction to award damages for post–discharge violations of the Fair Credit Reporting Act ("FCRA"). In any event, to have a claim under the FCRA concerning information reported to a credit reporting agency by a furnisher, the debtor must first make a request to the credit reporting agencies to have information removed, which is not alleged to have been done here. Moreover, a debtor has no legal right to compel a creditor to report timely payments. The Motion should be denied.

## II.    FACTS

The Motion alleges that (1) Debtors' mortgage payments were paid on time by the Chapter 13 Trustee; (2) after discharge, Debtors examined their credit reports and found that America's Servicing Company ("ASC")[1] reported late payments between September 2014 and January 2016; (3) Wells Fargo has not reported Debtors' timely post-discharge payments; (4) Debtors were told that Wells Fargo's credit reporting impacted them when they attempted to refinance; (5) Debtors disputed the information on their credit reports; and (6) Wells Fargo has not corrected inaccurate information on Debtors' credit reports. This is not an accurate summary of the events.

### A.    The Plans and the Initial Payments.

On March 1, 2011, Debtors filed their joint Chapter 13 petition (ECF Dkt. 1.) In their Petition, Debtors reported that they had a first mortgage ("Mortgage") and second mortgage with Wells Fargo of $202,009.27 and $49,269.37, respectively. (*Id*.) Debtors' Chapter 13 Plan proposed that they would make their monthly payments on the Mortgage as conduit payments

---

[1] America's Servicing Company is the trade name used by Wells Fargo.

through the Chapter 13 Trustee, that they would cure the arrearage under the Mortgage, and that they would seek to avoid the second lien. (ECF Dkt. 6, pg. 3.) Debtors subsequently amended their Plan, but did not change that the Mortgage would be paid conduit through the Chapter 13 Trustee, or that they would cure their arrearage.

On May 24, 2011, Wells Fargo filed a Proof of Claim on the Mortgage claiming a principal of $202,009.27 and an arrearage of $6,248.11. (ECF Claim 18-1.) The Court confirmed Debtors' Amended Plan on August 2, 2011. (ECF Dkt. 38).[2]

Wells Fargo's Proof of Claim stated that, among other things, the payments under the Mortgage were initially $1,382.42 per month. (ECF Claim 18-1.) Wells Fargo filed notices of payment changes in 2012 and 2013. (ECF Dkt. 59; ECF Dkt. 77.) Each notice adjusted the escrow amounts, and Debtors did not object. (*Id.*) From plan confirmation and until early 2014, the Chapter 13 Trustee made Debtors' monthly payments under the Mortgage, altering the payment amount in line with the notices of payment change. (*See* Chapter 13 Trustee Payment Record, attached as Exhibit A.) On September 26, 2014, ASC filed a notice of payment change providing, that effective November 1, 2014, Debtors' monthly mortgage payments would be $1,373.42. (ECF Dkt. 125.)

During their Chapter 13 bankruptcy, Debtor Esda Washington's employer, Provide Commerce, was to make monthly payroll deductions totaling $1,168.00. (ECF Dkt. 44.) Debtors modified their Plan in November 2013 to allow them to finance the purchase of a replacement vehicle. (ECF Dkt. 144.) Debtors reduced their monthly plan payments by $407 to pay for the replacement vehicle. (ECF Dkt. 144.) In turn, Provide Commerce was ordered to reduce its monthly payroll deduction to $964.50. (ECF Dkt. 121.)

---

[2] After confirmation, Debtors filed an adversary proceeding with respect to the second mortgage which the parties ultimately settled. (*See* adversary proceeding no. 11-2434, ECF Dkt. 24.)

### B. The Failure to Make Timely Payments.

The Mortgage provided that the payments were to be made on the first of every month. Mortgage, § 3. The Trustee, however, was not making payments by the first of the month. (Ex. A, pg. 19, Trustee Payment Record.)

In August 2014, Debtors' payment under the Mortgage should have been $1,377.09 (ECF Dkt. 77). The Trustee, however, only paid $1,092.50. (Ex. A, pg. 19, Trustee Payment Record.)

In November and December 2014, Provide Commerce did not make any payments from Mr. Washington's payroll. (Ex. A, pg. 19[3].)

In November 2014, the Chapter 13 Trustee only disbursed $932.93 to Wells Fargo. In December 2014, the Trustee's conduit mortgage payment was $845.79. (Ex. A, pg. 19.) Once again, payments for both months were supposed to be $1,377.09 (ECF Dkt. 77).

The Trustee underpaid the monthly conduit payment again in February 2015, only providing Wells Fargo $845.79. Again, the monthly payment amount should have been $1,377.09 (ECF Dkt. 77).

In July 2015, Provide Commerce stopped making payments for monthly payroll deductions. Debtors appear to try to remedy the shortfall by issuing the Trustee cashier's checks on August 3, 2015 for $445.15, on September 1, 2015 for $1,500, and on September 29, 2015 for $1,000. (Ex. A, pg. 12-13.)

In August 2015, the Trustee again did not make the full mortgage payment, only paying $1,277.12 to Wells Fargo. (Ex. A, pg. 13.)

The Trustee's records show that Provide Commerce did not make any payroll deductions for Esda Washington from July 2015 until discharge. Debtors did not file any amended schedules

---

[3] Provide Commerce is described as "Provide Gifts."

4

indicating a change in Esda Washington's employment. No party filed any amended payroll deduction orders for Provide Commerce. Further, neither Debtors nor the Trustee filed any motion to modify the plan.

From September 2015 onward, Debtors' plan appears to have been funded by the monthly deductions through payments by "Nationwide TFS."[4]

### C. The Trustee Made "Catch-up Payments" and the Mortgage was deemed current.

As reflected above, although the Trustee did not make timely full payments on Debtors' behalf, he also made additional payments. The Trustee made overpayments on the mortgage of $1,513.12 in September 2014, $1,525.65 in October 2014, $1,688.56 in January 2015, $2,554.04 in March 2015, and $1,569.72 in September 2015.[5]

The Trustee filed a motion to deem the Mortgage current on May 24, 2016. (ECF Dkt. 139.) The Trustee reported that any default in the Mortgage obligation was cured and both pre-petition arrearages and post-petition payments had been paid in full. (*Id.*) Wells Fargo did not object, and the Court granted the Trustee's motion on June 7, 2017, deeming the Mortgage current as of the final payment date and ordering Wells Fargo to adjust its loan balance and discharge any arrearages, costs, or fees. (ECF Dkt. 150.) There is no evidence to suggest that Wells Fargo did not comply.

### D. Credit Reporting.

The Motion alleges that they "pulled their credit reports and found that Wells Fargo[] reported late payments during the plan in 2014, 2015, and 2016" (*i.e.*, long before the Trustee

---

[4] Nationwide TFS apparently is a system that enables "Chapter 13 participants [to] make their payments from the comfort and privacy of their own homes." (TFS Bill Pay website, *available at* https://tfsbillpay.com/).

[5] The correct mortgage payment amount for September and October 2014 was $1,377.09, and for the payments from January 2015 through September 2015, the correct payment amount was $1,373.42. (See ECF Dkt. 77; ECF Dkt. 125.)

5

filed the motion to deem the Mortgage current), and that they have complained about credit reporting. Motion, pg. 3. As noted above, the Chapter 13 Trustee in fact failed to make timely payments during this time period.

In any event, as Debtors allege, long prior to the filing of the Motion, Wells Fargo has ceased credit reporting for April, 2012 through August, 2018.

**III.    LAW AND ANALYSIS**

    **A.    Standard of Review.**

To hold a party in contempt requires the moving party to "prove (1) the existence of an order that is in effect, (2) the requirement of specific conduct in the order, and (3) the violation of the order." *Glenn v. Ocwen Loan Servicing, LLC (In re Glenn)*, No. 03-15220-MAM-13, 2010 Bankr. LEXIS 1785 *10 (Bankr. S.D. Ala., May 28, 2010); *accord Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716 (6th Cir. 1996). The purpose of civil contempt is "coercive, not punitive"– meaning that the remedy is correction of the errant behavior, not punishment through the use of sanctions. *Glenn v. Ocwen Loan Servicing, LL*C, 2010 Bankr. LEXIS 1785 *11 (Bankr. S.D. Ala., May 28, 2010) citing *International Union, UMW v. Bagwell*, 512 U.S. 821, 828 (1994). Thus, "if the alleged contemnor purges itself of contempt, no remedy is available." *Glenn*, 2010 Bankr. LEXIS 1785 *10.

"[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience." *International Union, UMW*, 512 U.S. 821, 827 (U.S. 1994). In Ohio, the purpose of sanctions and civil contempt is "to coerce the contemnor in order to obtain compliance with the lawful orders of the court." *Westbury Vill. Ass'n v. Zweifel (In re Zweifel)*, 555 B.R. 659, 667 (Bankr. S.D. Ohio 2016) (Preston, J.) (quoting *Second Nat'l Bank v. Becker*, 62 Ohio St. 289, 294, 56 N.E. 1025 (1900)).

In the Sixth Circuit, the burden of proof for civil contempt requires the plaintiff to show by "clear and convincing evidence" that the defendant "violated a definite and specific order of the court requiring [the defendant] to perform or refrain from performing a particular act . . . ." *In re Humbert*, 567 B.R. 512, 519 (*quoting CFE Racing Prods. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015)).

B.  **There is No Basis to Hold Wells Fargo in Contempt.**

The discharge injunction prevents "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. 524(a)(2). A bankruptcy does not erase the underlying debt, but that "the discharge is only an injunction against attempts to collect the debt as a personal liability of the debtors." *Small v. Univ. of Kentucky*, No. 08-52114, 2011 Bankr. LEXIS 1868, at *12-13 (Bankr. E.D. Ky. May 13, 2011), citing *Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65, 70 (Bankr. D.Colo. 2000).

The truthful reporting that the debtors failed to make a payment is not a violation of the discharge injunction. *Small*, 2011 Bankr. LEXIS 1868, at *10-11. "[F]or a creditor to violate the discharge injunction by reporting information on a credit report, there must be an attempt by the creditor to collect a discharged debt." *Id.*; *Mahoney v. Washington Mutual, Inc. (In re Mahoney)*, 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007) (holding that reporting factual information about a debtor does not violate the discharge injunction and instead there must be "a linkage between the act of reporting and the collection or recovery of the discharged debt."); *Vogt*, 257 B.R. at 71 (holding that even "[f]alse reporting [after discharge], if not done to extract payment of the debt, is simply not an act proscribed by the Code.").

The Bankruptcy Code stays "any act to collect, assess, or recover" a claim against a debtor that arises prepetition. 11 U.S.C. § 362(a)(6). This provision bars creditors from

7

contacting or demanding payment from a debtor in an attempt to collect a debt during a pending bankruptcy. However, reporting accurate information about late payments during the pendency of a bankruptcy does not violate the automatic stay. *See Giovanni v. Bank of Am., N.A.*, No. C 12-02530 LB, 2012 U.S. Dist. LEXIS 178914, *15-17 (N.D. Cal. Dec. 17, 2012). Nor does post-petition credit reporting of overdue or delinquent payments violate the automatic stay. *Keller v. New Penn Fin., LLC (In re Keller)*, 568 B.R. 118, 122 (B.A.P. 9th Cir. 2017).

In this case, there is no basis to hold Wells Fargo in contempt for violating any order of this Court. As noted above, absent an attempt to coerce payment of a debt, reporting information to the credit reporting agency that the debtor failed to make a timely payment is not a violation of either the bankruptcy stay or the discharge injunction. *Small*, 2011 Bankr. LEXIS 1868, at *10-11; *Vogt*, 257 B.R. at 71; *Mahoney*, 368 B.R. at 584; *Giovanni*, 2012 U.S. Dist. LEXIS 178914 at *15-17; *In re Keller*, 568 B.R. at 122. There is no evidence that Wells Fargo has ever attempted to utilize credit reporting as a means to compel payment of a discharged debt.[6]

The next problem is that Debtors have not shown that there has been the reporting of information that was inaccurate. While the Motion states that Debtors timely made all of the monthly payments under the Mortgage through the Chapter 13 Trustee, that is simply not factual. The Chapter 13 Trustee did not make all of the payments under the Mortgage on time, apparently because Mr. Washington's employer was not making payroll deduction payments. However, by the end of the plan, the Trustee did bring Debtors' mortgage current, as evidenced by the Trustee's motion to deem current. In any event, the Motion alleges that from August 2014 through January 2016 Wells Fargo reported that they had not made timely payments under the Mortgage; that was true.

---

[6] In fact, the Mortgage was not discharged. 11 U.S.C. § 1328.

Nor is there any evidence that Wells Fargo violated the Order to deem the Mortgage current. That Order was entered in 2017, long after the time period referenced in the Motion. There is nothing to suggest that Wells Fargo failed to treat the Mortgage as being current after that date. To the contrary, as noted above, while the Chapter 13 Trustee did not make timely payments during this period, there were "catch up" payments made prior to the Order to deem the Mortgage current. Wells Fargo did not violate that Order either.

The third problem is that the purpose of contempt is coercive (*In re Zweifel*, 555 B.R. at 667), and there is nothing about which Wells Fargo should be coerced. Prior to the filing of the Motion, Wells Fargo had already stopped credit reporting for the months at issue.

Debtors have not and cannot show by clear and convincing evidence that Wells Fargo is in contempt of any order of this Court. The Motion should be denied.

### C. This Court Does Not Have Jurisdiction Over any Alleged Violation of the FCRA, and In Any Event, Debtors Have Not Stated a Claim for an FCRA Violation.

The Motion also asserts that Wells Fargo has inaccurately reported information to credit reporting agencies. While federal law provides claims for inaccurate reporting, this Court does not have jurisdiction over any such claim, and, in any event, the Motion does not assert facts to show the elements of that claim.

#### 1. This Court does not have jurisdiction over any FCRA claim, particularly one involving post-discharge conduct.

Bankruptcy courts have power to adjudicate their own orders, and can hear all "core" proceedings, which are those "arising under Title 11, or arising in a case under Title 11, as well as non-core proceedings that are otherwise 'related to'" a case under Title 11. *Atwood v. GE Money Bank (In re Atwood)*, 452 B.R. 249, 254 (Bankr. D.N.M. 2011); *see also* 28 U.S.C. § 157. Post-discharge claims regarding FCRA violations are not core proceedings. *Jenkins v. Fifth*

9

*Third Bank*, No. 1:16-cv-976, 2017 U.S. Dist. LEXIS 134065, *13 (S.D. Ohio Aug. 22, 2017); *Mann v. Equifax Info. Servs.*, No. 12-cv-14097, 2013 U.S. Dist. LEXIS 103210, at *12 (E.D. Mich. May 24, 2013) (holding that an FCRA claim related to reporting on a discharged debt was not a "core" matter).

Here, the alleged FCRA violations occurred well after Debtors received notice that their Chapter 13 proceedings were closed. Debtors claim they discovered the reporting when they attempted to refinance their home mortgage after discharge, were denied the refinancing, notified Wells Fargo, and believed the reports did not change. Motion, pg. 3. None of these actions occurred during the bankruptcy; therefore, Debtors' claims regarding the FCRA are not related to their Title 11 case.

Debtors reopened their bankruptcy, but bringing an FCRA claim about post-discharge actions does not magically endow this Court with jurisdiction. *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) (holding that after confirmation, the bankruptcy court only has jurisdiction over those matters with a close nexus to the plan, and "[t]he [debtor] also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens.") (quoting *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991)).

To the extent that Debtors have any complaints concerning credit reporting, those complaints should be addressed in a state or federal district court, not this Court.

  **2.  Debtors do not state a claim for violation of the FCRA.**

Assuming that the Court did have jurisdiction over an FCRA claim (and it does not), Debtors have not alleged facts showing any violation of the FCRA.

The purpose of the FCRA is to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Fed. Sav.*

*Bank*, 696 F.3d 611, 614 (6th Cir. 2012), quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52, (2007). In accordance with this purpose, the FCRA imposes certain duties on "furnishers" of information. 15 U.S.C. 1681s-2(a)-(b). A furnisher is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. 660.2(c). A furnisher's duties include providing accurate information to credit reporting agencies and, upon notification from a credit reporting agency indicating that a borrower disputes information in his or her report, investigating the dispute, communicating the results of its investigation to the credit reporting agency, and acting, as appropriate, based on its findings. 15 U.S.C. 1681s-2(a); *Boggio*, 696 F.3d at 614-15 (quoting 15 U.S.C. 1681s-2(b)(1)).

There is no private right of action for violation of the obligations imposed by 15 U.S.C. 1681s-2(a). "The FCRA does not impose strict liability for inaccurate reports; rather, it imposes a duty of reasonable care in preparing the report." *Glosson v. Equifax Credit Info. Servs.*, No. 5:95-CV-104-BRA, 1996 U.S. Dist. LEXIS 13985, *9 (E.D. N.C. Aug. 13, 1996). 15 U.S.C. 1681s-2(b) imposes an obligation to investigate a consumer's dispute of how the furnisher is reporting the account and correct errors, and most courts within the Sixth Circuit have found that there is a private right of action for a furnisher's failure to comply with that provision. 15 U.S.C. 1681s-2(c); *Bach v. First Union Nat'l Bank*, 6th Cir. No. 04-3899, 2005 U.S. App. LEXIS 18197, at *10 (Aug. 22, 2005), rev'd on other grounds, 486 F.3d 150 (6th Cir. 2007); *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 783-784, 783 n.4 (W.D.Ky. 2003). Only a failure to complete an adequate investigation and correct errors in the initial reporting would trigger a claim for violation of the obligations under 15 U.S.C. 1681s-2(b); *Boggio*, 696 F.3d at 615 (quoting 15 U.S.C. 1681s-2(b)(1)(C)-(D)).

The plaintiff must show "that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed," and then either willfully or negligently failed to conduct an investigation into the dispute and correct the reporting period. *Downs v. Clayton Homes, Inc.*, 88 Fed. Appx. 851, 853-54 (6th Cir. 2004) (*citing Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639-640 (5th Cir. 2002)); *Boggio*, 696 F.3d at 611.

There is no FCRA requirement that a credit report include a "positive" credit history. *Glosson v. Equifax Credit Info. Servs.*, 1996 U.S. Dist. LEXIS 13985, at *10 (citing *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 45 (D.C. Cir. 1984) (stating that the FCRA does not require that the report include all relevant information)). Rather, the duties regarding "positive" credit reporting are the same as for negative reporting— the plaintiff must demonstrate that after the furnisher received notice from a consumer reporting agency that credit information is disputed, then the furnisher either willfully or negligently failed to conduct an investigation into the dispute and correct the report. *Downs v. Clayton Homes, Inc.*, 88 Fed. Appx., at 853-54.

Here, Motion does not present any facts that suggest that Wells Fargo violated the FCRA. While the Motion states that Debtors "disputed the information on their credit reports multiple times," it does not allege that Debtors reported their dispute *to a consumer reporting agency*. Failing to properly dispute credit inaccuracies defeats an FCRA claim. *Tomlin v. Bank of N.Y. Mellon (In re Tomlin)*, 2016 Bankr. LEXIS 1026, *24-25 (Bankr. E.D.Ky. Mar. 31, 2016) (holding that a furnisher does not have a responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency and "notification from a consumer is not enough."); *see also Brown v. Wal-Mart Stores, Inc.*, 507 Fed. Appx. 543, 547 (6th Cir 2012). The absence of that allegation is fatal to any FCRA theory.

Even if Debtors disputed their credit report to a reporting agency, Debtors have not satisfied the second prong of an FCRA violation. The Chapter 13 Trustee records show that Debtors' mortgage payments were in fact late during the bankruptcy.

Finally, as noted above, Debtors assert that they have been harmed due to a "lack of positive reporting where there should have been positive reporting." Motion, p. 3. But there is no "right" to positive reporting. *Glosson*, 1996 U.S. Dist. LEXIS 13985 at *10; *Koropoulos*, 734 F.2d at 45. This theory again fails as a matter of law.

### IV. CONCLUSION

Wells Fargo is not in contempt of any order of this Court. Reporting information to a credit reporting agency is not a violation of the discharge injunction absent evidence that the reporting was an attempt to compel payment of a discharged debt, and there is no suggestion that occurred here. Moreover, the Chapter 13 Trustee did not make timely payments during the bankruptcy, and the truthful reporting of that information is neither a violation of the discharge injunction nor of the stay. Wells Fargo has not violated the Order to deem the Mortgage current. At this point, Wells Fargo is no longer reporting information concerning those payments, and, therefore, there is no purpose to be served by holding Wells Fargo in contempt.

This Court does not have jurisdiction over claims under the FCRA, particularly claims involving post–discharge conduct. In any event, there has been no violation of the FCRA.

Debtors have not and cannot show by clear and convincing evidence that Wells Fargo should be held in contempt. The Motion should be denied.

Respectfully submitted,

/s/ Scott A. King
Scott A. King (#0037852)
THOMPSON HINE LLP
10050 Innovation Drive
Suite 400
Miamisburg, Ohio 45342
Telephone: (937) 443-6560
Facsimile: (937) 443-6635
Scott.King@Thompsonhine.com

and

Kevin D. Oles (#0086990)
THOMPSON HINE LLP
41 South High Street
Suite 1700
Columbus, Ohio 43215
Telephone: (614) 469-3227
Facsimile: (614) 469-3361
Kevin.Oles@ThompsonHine.com

*Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I certify that on February 1, 2019, a true and correct copy of the Memorandum in Opposition to Debtors' Motion to Require Wells Fargo Bank, N.A. to Appear and Show Cause was served:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Attorney Frank Pees on behalf of the Chapter 13 Trustee at trustee@ch13.org

Asst. U.S. Trustee (Col.), ustpregion09.cb.ecf@usdog.gov

Attorney Athena Inembolidis on behalf of the Debtors at Athena@AthenaLegal.com

And by ordinary U.S. Mail, postage prepaid, to the following:

> Esda G. Washington, Jr.
> Kelly Sue Washington
> 7471 Williamson Lane
> Canal Winchester OH 43110

/s/ Scott A. King
Scott A. King